**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 15-60-DLB-CJS**

**RODNEY HARRISON**                                                          **PLAINTIFF**

**vs.**                        **MEMORANDUM OPINION AND ORDER**

**TEAMCARE–A Central States Health Plan, et al.**              **DEFENDANTS**

******************

## I.    Introduction

Defendant Central States Southeast and Southwest Areas Health and Welfare Fund ("Central States") moves to dismiss Count I of Plaintiff Rodney Harrison's Amended Complaint for failure to state a claim upon which relief may be granted.  Central States argues that Harrison cannot seek equitable relief under ERISA pursuant to § 502(a)(3) because he is able to proceed under § 502(a)(1)(B), another of ERISA's civil enforcement mechanisms.  Central States further insists that a claim under § 502(a)(1)(B) is premature because Harrison has not exhausted his administrative remedies or demonstrated that exhaustion would be futile.  Defendant Health Care Service Corporation ("HCSC"), doing business as Blue Cross and Blue Shield of Illinois, moves to dismiss Counts II through VI of Harrison's Amended Complaint, arguing that these state law claims are subject to conflict preemption.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367.

## II.     Factual and Procedural Background

Harrison participated in Central States' Southeast and Southwest Areas Health and Welfare Fund, a nationally administered employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  (*Id.* at p. 3, ¶ 2, 7).  HCSC, the third party administrator for the plan, was responsible for "render[ing] advice with respect to Claim Payments and mak[ing] Claim Payments on behalf of the plan administrator of the Fund's ERISA benefit plan."  (Doc. # 36 at 10).  HCSC was "not the plan administrator of the Fund's separate ERISA welfare benefit plan," nor was it "a named fiduciary with respect to the Fund's separate ERISA welfare benefit plan."  (*Id.*).

In March of 2012, Harrison was injured in a car accident.  (Doc. # 1-1, p. 3, ¶ 7).  Central States paid some of the medical expenses he incurred as a result of that accident.  (*Id.*).  Harrison sued the other party to the accident, and two years later, they reached a settlement.  (*Id.* at p. 3, ¶ 8).  Under the terms of the plan, a subrogation lien in Central States' favor attached to the settlement funds.  (*Id.*).  Harrison and Central States then settled this subrogation lien.  (*Id.* at p. 4, ¶ 9).  Harrison agreed to pay Central States $57,628.45, and in exchange, Central States agreed to pay any outstanding medical claims.  (*Id.* at p. 4, ¶ 10).  Central States also agreed to pay future claims pursuant to the terms of Harrison's major medical extension.  (*Id.*).

On September 23, 2014, Central States received a check from Harrison for the agreed-upon sum and confirmed that his medical claims would be processed and paid.  (*Id.*). Central States failed to pay the outstanding medical expenses the following month, which adversely affected Harrison's credit profile.  (*Id.* at p. 4, ¶ 12, 13, 15).  He notified Central States of this problem in late October, and again in late November.  (*Id.* at p. 4, ¶

2

12, 14).  In early December, Central States assured Harrison that his claims had been processed and checks submitted to the proper payees.  (*Id.* at p. 4, ¶ 16).  However, as of January 14, 2015, only minimal payments had been made on the outstanding account balance.  (*Id.* at p. 5, ¶ 17).  Central States promised Harrison that checks would be sent to the proper payees on January 21, 2015, claiming that the delay was caused by communication issues with HCSC, the plan's third party administrator.  (*Id.*).  However, Harrison still had a $12,000 balance with Commonwealth Orthopaedic Centers as of March 16, 2015.  (*Id.* at p. 5, ¶ 18-20).

That same day, Harrison filed suit against Central States and HCSC, asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violations of the Kentucky Unfair Claims Settlement Practices Act, common law bad faith, and violations of the Kentucky Consumer Protection Act.  (Doc. # 1-1).  On April 4, 2015, Harrison's outstanding bills from Commonwealth Orthopaedic Centers were paid in full.[1] (Doc. # 47 at 2, n. 2).  Shortly thereafter, HCSC removed this case to federal court on the basis of federal question jurisdiction, asserting that "the crux of the lawsuit at issue is a claim for benefits under an ERISA-based insurance policy."  (Doc. # 1).  Central States consented to the removal.  (Doc. # 6).

Although HCSC removed the case to this Court on the basis of federal question jurisdiction, the Court immediately noticed that Harrison's complaint asserted only state law claims.  To ensure that removal was proper, the Court ordered the parties to submit

---

1) Although not mentioned specifically in the Complaint or the Amended Complaint, Harrison apparently had additional outstanding bills from Rehab on the Road.  (Doc. # 56).  These bills were paid on April 29, 2015.  (*Id.*).

3

memoranda discussing the existence of federal question jurisdiction.  (Doc. # 7).  After reviewing the memoranda, the Court sustained the removal, finding that Harrison's state law claims against Central States and HCSC were completed preempted by ERISA.  (Doc. # 26).  The Court further ordered Harrison to file an amended complaint re-characterizing his claims under ERISA.  (*Id.*).

Approximately two weeks later, Harrison filed a Motion to Alter, Amend and/or Vacate the Court's Order.  (Doc. # 28).  Harrison admitted that his claims against Central States should be re-cast in terms of ERISA, but insisted that his state law claims against HCSC should remain undisturbed. The Court ultimately agreed with Harrison, reasoning that he could not have brought his claims against HCSC under one of ERISA's civil enforcement mechanisms because HCSC is neither the plan nor the plan administrator. Accordingly, the Court concluded that Harrison's claims against HCSC were not completely preempted, and thus, did not require re-characterization under ERISA.  However, the Court retained supplemental jurisdiction over these state law claims because they arose out of the same facts as the ERISA-based claim against Central States.

Consistent with the Court's Orders, Harrison filed his Amended Complaint on October 27, 2015.  (Doc. # 38).  He asserted one ERISA-based claim for breach of fiduciary duty against Central States.  (*Id.*).  He also brought state law claims for breach of contract, violation of the implied covenant of good faith and fair dealing, violation of the Kentucky Unfair Claims Settlement Practices Act, common law bad faith and violation of the Kentucky Consumer Protection Act against HCSC.  (*Id.*).  In response, Central States

4

and HCSC filed the instant Motions to Dismiss,[2] which are fully briefed and ripe for review. (Docs. # 40, 41, 44, 45, 46 and 47).

## III. Analysis

### A. Standard of Review

A complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must also contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Moreover, the Court "is not bound to accept as true unwarranted factual inferences, or legal conclusions unsupported by well-pleaded facts." *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010).

### B. Central States' Motion to Dismiss

#### 1. ERISA's Civil Enforcement Provisions

ERISA's civil enforcement provisions "authoriz[e] civil actions for six specific types of relief." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 376 (2002). They are set forth below:

---

2) The Court allowed Central States to submit supplemental authority on the issues raised in briefing its Motion. (Docs. # 48 and 49). It then gave Harrison an opportunity to respond and Cental States time to reply. (Docs. # 50, 51, 52, 53 and 54).

5

(a)    Persons Empowered to Bring a Civil Action.

A civil action may be brought–

(1)    by a participant or beneficiary–

(A)    for the relief provided for in subsection © of this section [concerning requests to the administrator for information], or

(B)    to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2)    by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [breach of fiduciary duty];

(3)    by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4)    by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025© of this title [information to be furnished to participants];

(5)    except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (I) to redress such violation or (ii) to enforce any provision of this subchapter;

(6)    by the Secretary to collect any civil penalty under paragraph (2), (4), (5), (6), (7), (8), or (9) of subsection © of this section or under subsection(I) or (I) of this section.

29 U.S.C.A. § 1132(a).  These provisions, more commonly known by their original section number in the Act, § 502(a), create an "interlocking, interrelated and interdependent remedial scheme." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985).  This scheme

6

"represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987).

As the statute itself indicates, three of these avenues are open to plan participants who, like Harrison, wish to sue the plan or plan administrator. First, they may sue to recover benefits due, enforce their rights, or clarify their rights under the terms of the plan pursuant to § 502(a)(1)(B). *See* 28 U.S.C.A. § 1132(a)(1)(B). However, plan participants must exhaust their administrative remedies before bringing an action under § 502(a)(1)(B). *See Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991). Second, plan participants may assert a claim for breach of fiduciary duty under § 502(a)(2). *See* 29 U.S.C.A. § 1132(a)(2). This subsection does not yield individualized relief – any benefits from suit inure to the plan itself. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 143-45 (1985). Third, plan participants may seek "appropriate equitable relief" under § 502(a)(3). *See* 29 U.S.C.A. § 1132(a)(3). This may include individualized relief for breach of fiduciary duties. *See Varity Corp. v. Howe*, 516 U.S. 489, 509 (1996). However, this subsection is only available to plan participants who cannot proceed under either § 502(a)(1)(B) or § 502(a)(2). *Id.*

### 2.    Harrison's Amended Complaint

Harrison initially asserted state law claims for breach of contract, violation of the implied covenant of good faith and fair dealing, violation of the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA"), common law bad faith, and violation of the Kentucky Consumer Protection Act ("KCPA") against Central States. (Doc. # 1-1). All of these claims were predicated upon Central States' failure to ensure that Harrison's outstanding

7

medical expenses were paid in a timely fashion.  (*Id.*).  Harrison sought compensatory and punitive damages, as well as costs, attorney's fees, and "all other relief, both legal and equitable, to which [he] may appear entitled."  (*Id.* at 8).

Upon finding that these state law claims were completely preempted by § 502(a), the Court ordered Harrison to re-characterize his claims against Central States in terms of ERISA.  (Doc. # 26).  Accordingly, Harrison filed an Amended Complaint setting forth one claim for breach of fiduciary duty against Central States.  (Doc. # 38).  Harrison specifically alleges that, as a result of Central States' breach, he "was forced to pay minimal payments out-of-pocket to medical providers that [Central States] was otherwise obligated to pay and he suffered damage to his credit."  (Doc. # 38 at 5).  He expresses an intent "to recover benefits due to him under the terms of his plan/settlement agreement, to enforce his rights under the terms of the plan/settlement agreement, attorney fees and costs, and any and all other appropriate equitable relief including, but not limited to, prejudgment interest, a surcharge, and any other make-whole relief," broadly citing to 29 U.S.C. § 1132.  (*Id.* at 5-6).

The Amended Complaint does not specifically identify which civil enforcement mechanism Harrison seeks to utilize.  It states that Harrison seeks to "recover benefits due to him under the terms of his plan/settlement agreement" and to "enforce his rights under the terms of the plan/settlement agreement."  (*Id.* at 6).  Because this language parrots that of § 502(a)(1)(B), one might assume that he is proceeding under that subsection. However, he has labeled the claim as one for breach of fiduciary duty, which is only available under § 502(a)(2) or § 502(a)(3).

Cognizant of this ambiguity, Central States insists that Harrison's claim is essentially one for the recovery of benefits under § 502(a)(1)(B), regardless of the label he has placed on it.  Central States then argues that Harrison's claim must be dismissed because he has not exhausted his administrative remedies.  *See Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 717-18 (6th Cir. 2005) ("[I]t is well settled that ERISA plan beneficiaries must exhaust administrative remedies prior to bringing a suit for recovery on an individual claim" unless "exhaustion would be futile.").  Alternatively, Central States contends that, even if Harrison's claim is properly read as one for breach of fiduciary duty, dismissal is appropriate because § 502(a)(2) does not permit Harrison to recover the individualized monetary relief that he seeks.  *Adcox v. Teledyne,* 21 F.3d 1381, 1390 (6th Cir. 1994) (upholding the district court's decision to dismiss a claim for breach of fiduciary duty because "a cause of action under 1132(a)(2) permits recovery to inure only to the ERISA plan, not to individual beneficiaries"), *overruled on other grounds by Winnett v. Caterpillar, Inc.*, 553 F.3d 1000 (6th Cir. 2009).

Harrison responds that "Central States misunderstands the core of [his] . . . Breach of Fiduciary Duties claim against them."  (Doc. # 45 at 2).  He disclaims any intent to sue for recovery of benefits under § 502(a)(1)(B) or for breach of fiduciary duty under § 502(a)(2).  Instead, he seeks to sue Central States for breach of fiduciary duty under § 502(a)(3), asserting that the other two subsections do not provide him a remedy. Accordingly, the remainder of the Court's analysis of Central States' Motion to Dismiss will focus on whether Harrison may bring suit under § 502(a)(3).

9

### 3.  Harrison's Ability to Proceed Under § 502(a)(3)

By its terms, § 502(a)(3) simply allows plan participants to obtain "other appropriate equitable relief" to "redress . . . violations" of "any provisions of this subchapter or the terms of the plan" or enforce them.  The United States Supreme Court held that this language permits plan participants or beneficiaries to bring lawsuits seeking individualized relief for breach of fiduciary obligations.  *Varity Corp. v. Howe*, 516 U.S. 489, 509 (1996).  However, the Court cautioned that § 502(a)(3) is a "catch-all" provision or "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy."  *Id.* at 515.

In *Varity*, the plaintiffs participated in an employee benefits plan administered by an employer mired in financial trouble.  *Id.* at 493-94.  Hoping to solve its fiscal problems, the employer advised the plaintiffs to transfer their employment and their non-pension benefits to an insolvent subsidiary.  *Id.*  The subsidiary later went into receivership, causing the plaintiffs to lose their benefits.  *Id.*  The Court held that the plaintiffs could sue their former employer for breach of fiduciary duty under § 502(a)(3), reasoning that they would not be able to obtain the individualized relief sought under ERISA's other civil enforcement provisions.  *Id.* at 515.  The Court explained that the plaintiffs could not proceed under § 502(a)(1)(B) because they were no longer members of the original plan and were not due any benefits under the terms of the plan.  *Id.*  The Court further found that the plaintiffs unable to proceed under § 502(a)(2) because that section does not provide an individualized remedy for individual beneficiaries.  *Id.*

10

Harrison claims that he is unable to proceed under § 502(a)(1)(B) because Central States actually approved his claim for benefits.[3]  In making this argument, Harrison suggests that § 502(a)(1)(B) functions solely as a mechanism to contest the denial of benefits.   It may be fair to say that most of the suits under § 502(a)(1)(B) focus on the improper denial of benefits – likely because most plan participants who are approved for benefits receive them without incident – but that does not necessarily lead to the conclusion proffered by Harrison.  This subsection plainly authorizes plan participants to bring a civil action to recover benefits due under the terms of the plan, enforce rights under the terms of the plan, or clarify rights to future benefits under the terms of the plan.  29 U.S.C. 1132(a)(1)(B).  The Court simply does not see why Harrison's suit to obtain the funds that Central States promised to pay to his medical providers is not tantamount to a suit to recover benefits or enforce his rights under the terms of the plan.  *See Pilot Life*, 481 U.S. at 53 (explaining that "[r]elief [under this subsection] may take the form of *accrued benefits due*") (emphasis added).

Nevertheless, Harrison insists that he cannot proceed under § 502(a)(1)(B) because he would have to exhaust his administrative remedies before bringing suit, a futile effort in his view.  This argument confuses the concept of futility, which pertains to the timing of a suit under § 502(a)(1)(B), with the question of availability, which asks whether an individual can bring suit under this subsection at all.  *Compare Hill v. Blue Cross and Blue Shield of Mich.*, 409 F.3d 710, 720 (6th Cir. 2005) (explaining that a plan participant must exhaust

---

3) Harrison also insists that he is unable to bring suit under § 502(a)(2) because it does not authorize individualized relief.  Having reviewed the *Varity* case, the Court concurs with his conclusion.  *See Varity*, 516 U.S. at 509.  However, this does not impact the Court's analysis because Harrison is able to proceed under § 502(a)(1)(B), for reasons explained herein.

administrative remedies prior to filing suit under § 502(a)(1)(B) unless "it would be futile or would furnish inadequate relief") *with Varity*, 516 U.S. at 509 (finding that the plaintiffs could not seek relief under § 502(a)(1)(B) because they were no longer members of the plan at issue). In fact, the issue of futility seems to proceed on the assumption that relief is otherwise available under § 502(a)(1)(B). *See Hill*, 409 F.3d at 720.

However, even if the Court may consider futility in determining whether Harrison may bring suit under § 502(a)(1)(B), he bears the burden of proving that exhaustion is futile. *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (1998). "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* Harrison's bald assertions of futility do not come close to meeting this standard. Thus, the Court concludes that Harrison could have brought suit under § 502(a)(1)(B). This precludes him from proceeding under § 502(a)(3). *Varity*, 516 U.S. at 509. Although the Court could simply dismiss Harrison's claim against Central States based on this finding, it will proceed with its analysis due to the somewhat unusual posture of this case. Assuming *arguendo* that Harrison can only obtain relief under § 502(a)(3), the Court must next consider whether Harrison seeks "appropriate equitable relief." *Id.*

### 4.    Equitable Relief Under § 502(a)(3)

"ERISA abounds with the language and terminology of trust law." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989). Although "the courts of equity had exclusive jurisdiction over virtually all actions by beneficiaries for breach of trust," the United States Supreme Court has held that the term "equitable relief" does not include "all relief available for breach of trust at common law." *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 256-

12

58 (1993) (observing that "there were many situations – not limited to those involving enforcement of a trust – in which an equity court could establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority").  Instead, the Court chose to define "equitable relief" as "those categories of relief that were *typically* available in equity."  *Id.* at 256 (emphasis in original).

To determine whether the remedy a plaintiff seeks is legal or equitable, courts must consider the basis for the plaintiff's claim and the nature of the underlying remedies sought. *Montanile v. Board of Trustees of Natl Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 657 (2016) (explaining that standard treatises on equity "establish the basic contours of what equitable relief was typically available in premerger equity courts") (internal quotations omitted).  These inquiries, separate in theory, often overlap in practice.  *See, e.g., Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217 (2002) (characterizing the plaintiff's claim as one for legal restitution, not equitable restitution, because it sought to impose personal liability on the defendants for benefits conferred upon them, rather than a constructive trust or equitable lien on particular property).

In *Mertens*, the Court identified restitution as a type of equitable relief.  508 U.S. at 256-58.  However, the Court later clarified that "not all relief falling under the rubric of restitution is available in equity."  *Great-West*, 534 U.S. at 213-14.  The Court explained that a plaintiff had a "right to restitution *at law* through an action derived from the common-law writ of assumpsit" where he "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him."  *Id.* at 213 (internal quotations omitted).  By contrast, "a plaintiff could seek restitution *in equity*, ordinarily in the

13

form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id.*

As the above-cited case law suggests, equitable relief may take the form of money. *Id.* However, the Court indicated that the funds sought must be identifiable and within the defendant's possession and control. *Compare Great-West*, 534 U.S. at 213-14 (finding that the plaintiff's claim was one for legal restitution because it sought to recover from the defendants' general assets) *with Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 363 (2006) (concluding that the plaintiff's claim was one for equitable restitution because it sought to recover tort settlement funds that were specifically set aside in an investment account pending the outcome of the ERISA suit brought by the plan fiduciary).

In this case, Harrison seeks to recover the funds that Central States promised to pay his medical providers in settling the subrogation lien on his tort judgment.  This is essentially the inverse of the situation presented in *Great-West* and *Sereboff*.  However, case law suggests that Harrison may have "the modern-day equivalent of an 'equitable lien by agreement'" because he seeks to hold Central States to its promise to pay his outstanding medical bills.  *See US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537, 1546 (2013) (explaining that an equitable lien by agreement "both arises from and serves to carry out a contract's provisions").  However, Central States has fulfilled its promise to pay his outstanding medical bills, as Harrison himself admits.  (Doc. # 56).  Therefore, Harrison has already obtained the relief he seeks.  Central States may not have made the payments in a timely fashion, but any sums awarded to Harrison for the stress he suffered and the negative impact on his credit profile would be compensatory, and therefore legal, in nature.

14

*See Mertens*, 508 U.S. at 248 (characterizing compensatory damages as the "classic form of legal relief").

Nevertheless, Harrison argues that he is entitled to a "surcharge" under *CIGNA Corp. v. Amara*. In *Amara*, the Court held that funds awarded to already retired beneficiaries qualified as equitable relief, even though the funds were not specifically identifiable, because "[e]quity courts possessed the power to provide monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." 563 U.S. 421, 441-42 (2011). However, *Amara* presented very different facts from this case. The *Amara* plaintiffs sued their employer, challenging its decision to convert a traditional defined benefit pension plan to a "cash balance" retirement plan. *Id.* at 421-22. The district court reformed the plan and issued an injunction "requir[ing] the plan administrator to pay to already retired beneficiaries money owed them under the plan as reformed." *Id.* The Court approved of this award, characterizing it as a kind of "make-whole relief." *Id.*

Given the differences between the facts of *Amara* and the present case, the Court believes that *Amara*'s holding is of limited value to Harrison. However, even if *Amara* does authorize the use of a surcharge in this situation, Harrison is not entitled to such an award because he has already been made whole. As discussed above, Central States has paid the promised sum to Harrison's medical providers. Therefore, any further sums awarded to him would compensate him for losses sustained in connection with the delayed payment. Such an award would qualify as legal, rather than equitable, relief. Because any claim for equitable relief that Harrison may have had is now moot, and because any further sums could only be recovered under a legal theory, rather than an equitable theory, the Court

15

finds that Harrison is unable to proceed under § 502(a)(3).  Accordingly, Central States'

Motion to Dismiss is **granted**.

### C.    HCSC's Motion to Dismiss

ERISA also includes an express preemption[4] provision, codified at 28 U.S.C. §

1144(a), that "preempts state law and state law claims that 'relate to' any employee benefit

plan as that term is defined therein." *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d

1272, 1275 (6th Cir. 1991). "The phrase 'relate to' is given broad meaning such that a state

law cause of action is preempted if 'it has connection with or reference to that plan.'" *Id.* at

1275-76.  Only those claims "whose effect on employee benefit plans is merely tenuous,

remote or peripheral are not preempted." *Id.* at 1276.  The practical result is that "virtually

all state law claims relating to an employee benefit plan are preempted by ERISA." *Id.*

However, the express preemption provision is followed by a savings clause, which

states in pertinent part:

(b)    Construction and application

. . .

(2)(A)  Except as provided in subparagraph (B), nothing in this
subchapter shall be construed to exempt or relieve any person
from any law of any State which regulates insurance, banking,
or securities.

(B)    Neither an employee benefit plan described in section 1003(a)
of this title, which is not exempt under section 1003(b) or this
title (other than a plan established primarily for the purpose of
providing death benefits), nor any trust established under such

---

4) The Court has also referred to this concept as conflict preemption.  (Docs. # 26 and 37).  It is a
defense to a state law claim that does not have jurisdictional consequences, unlike complete or field
preemption, which the Court discussed in its two previous Orders.  *See Ouellette v. Christ Hosp.*,
942 F. Supp. 1160, 1163 (S.D. Ohio 1996).

> a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(A).

Harrison asserts claims for breach of contract, violation of the implied covenant of good faith and fair dealing, violation of the Kentucky Unfair Claims Settlement Practices Act, common law bad faith, and violation of the Kentucky Consumer Protection Act against HCSC. (Doc. # 38). He argues that these claims are not subject to conflict preemption because they have only a remote and tenuous connection to the employee benefit plan. However, Harrison overlooks the fact that he would have no claims at all against HCSC, but for his participation in the employee benefit plan. For this reason, the Court finds that Harrison's state law claims against HCSC "relate to" the plan. That being the case, the Court must now consider whether these claims fall within § 1144(b)(2)(a)'s savings clause.

For many years, the United States Supreme Court endorsed the following test to determine whether a state law fell within § 1144's savings clause. First, the Court asked, "whether, from a 'common-sense view of the matter,' the contested prescription regulates insurance." *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 367 (1999). Second, the Court used three factors "to determine whether the regulation fits within the 'business of insurance' as that phrase is used the McCarran-Ferguson Act." *Id.* The relevant factors were: (1) whether the practice has the effect of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the

insurance industry.  *Id.*

In 2003, the Court decided to "make a clean break from the McCarran-Ferguson factors" and endorse a new two-part test.  *Ky. Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003).  The Court held that "[f]or a state law to be deemed a 'law . . . which regulates insurance' under 1144(b)(2)(A), it must satisfy two requirements."  *Id.*  "First, the state law must be specifically directed toward entities engaged in insurance."  *Id.*; *see also Am. Council of Life Ins. v. Ross*, 558 F.3d 600, 605 (6th Cir. 2009) (explaining that "state laws are 'directed toward entities engaged in insurance' if insurers are regulated with respect to their insurance practices").  Second, "the state law must substantially affect the risk pooling arrangement between the insurer and insured."  *Miller*, 538 U.S. at 341; *see also Ross*, 558 F.3d at 606 (stating that the second prong is satisfied if the statute "alter[s] the scope of permissible bargains between insurers and insureds").

In this case, several of Harrison's claims are based on state laws that are not specifically directed towards entities engaged in insurance.  Accordingly, § 1144's savings clause does nothing to save his claims for breach of contract, breach of the duty of good faith and fair dealing, Kentucky Consumer Protection Act ("KCPA"), and common law bad faith.  *See Basham v. Prudential Ins. Co. of Am.*, Civ. A. No. 3:11-CV-00464-CRS, 2012 WL 5878158, at *6, n. 9 (W.D. Ky. Nov. 20, 2012) (concluding that the plaintiff's common law claims for breach of contract and breach of the duty of good faith and fair dealing did not regulate insurance and were therefore preempted); *Curry v. Cincinnati Equitable Ins. Co.*, 834 S.W.2d 701, 706 (Ky. Ct. App. 1992) (finding that the plaintiff's KCPA claim "is also preempted by ERISA . . . because the Act regulates more than just the insurance industry"); *Pemberton v. Reliance Standard Life Ins. Co.*, Civ. A. No. 08-86-JBC, 2008 WL

18

4498811, at *9 (E.D. Ky. Sept. 30, 2008) ("Bad faith laws are rules of general applicability and are not specifically directed at the insurance industry, and therefore, they are not protected by the preemption savings clause.") (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 50-51 (1987)).[5]

However, Harrison's claim under the Kentucky Unfair Claims Settlement Practices Act ("KUCSPA") requires more attention. "[T]here can be no doubt that [KUCSPA] was intended to regulate insurance settlement practices." *Dearing v. Continental Assurance Co.*, Civ. A. No. 90-0148-BG(H), 1993 WL 4168, at *2 (W.D. Ky. 1993); *see also Curry*, 834 S.W.2d 701, 707 (Ky. Ct. App. 1992) (stating that KUCSPA "pertains to and regulates practices relating to the procedural aspects of claims processing and is intended to protect the public from unfair trade practices and fraud"). Despite this assessment, several courts sitting in Kentucky have held that KUCSPA claims were expressly preempted under *Pilot Life* for failure to satisfy the McCarran-Ferguson factors. *See Cummings v. Thomas Indus., Inc.*, 812 F. Supp. 99 (W.D. Ky. 1993); *Curry*, 834 S.W.2d at 707; *Dearing*, 1993 WL 4168, at *2.

By contrast, the new *Miller* test "requires only that the state law substantially affect the risk pooling arrangement; it does not require that the state law actually spread the risk." 538 U.S. at 339, n. 3. One of our sister courts observed that the provisions of KUCSPA "dictate the method by which consent to enter into an insurance contract may be obtained,

---

5) The Court recognizes that the *Curry* case pre-dates the adoption of the *Miller* test. Accordingly, the Kentucky Court of Appeals asked whether the KCPA regulated insurance, not whether it was specifically directed at entities engaged in insurance. If the KCPA could not satisfy the former test, it cannot satisfy the slightly more stringent latter test. Therefore, the Court believes that the ultimate conclusion in *Curry* is still sound.

require an insured to be made aware of the terms of that contract through actual receipt, and prohibit alteration of the terms of the contract." *Dublin Eye Assoc. v. Mass. Mut. Life Ins. Co.*, Civ. A. No. 11-128-JBC, 2011 WL 3880491, at *2 (E.D. Ky. Aug. 31, 2011). Because "[t]he provisions here dictate the conditions under which an insurance contract may be deemed valid," the court ultimately concluded that KUCSPA substantially affects the risk-pooling arrangement between insurer and the insured. *Id.*

The Court finds the analysis in *Dublin Eye Associates* equally applicable here. KUCSPA is a part of the Kentucky Insurance Code. Ky. Rev. Stat. Ann. § 304.12-230. It is specifically intended to "regulate and protect the bargain struck between the insurer and the insured." *Dublin Eye Assoc.*, 2011 WL 3880491, at *2. If § 1144's savings clause does not capture KUCSPA claims, what state law claims would it capture? Indeed, would it capture any state law claims at all? The Court suspects that it would not. This cannot be the result that Congress intended in drafting § 1144's savings clause. Accordingly, the Court finds that § 1144's savings clause captures Harrison's KUCSPA claim and saves it from preemption. Defendant HCSC's Motion to Dismiss will be **granted** with respect to Harrison's claims for breach of contract, violation of the implied covenant of good faith and fair dealing, common law bad faith, and violation of the KCPA, and **denied** with respect to his KUCSPA claim.

## IV.    Conclusion

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that Central States' Motion to Dismiss (Doc. # 41) be, and is, hereby **GRANTED IN FULL**.

**IT IS FURTHER ORDERED** that HCSC's Motion to Dismiss (Doc. # 40) be, and is, hereby **GRANTED** as to Harrison's claims for breach of contract, violation of the implied covenant of good faith and fair dealing, common law bad faith, and violation of the KCPA and **DENIED** with respect to his KUCSPA claim.

This 13th day of May, 2016.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\Opinions\Covington\2015\15-60 MOO re MTDs.wpd